Turley, J.
delivered the opinion of the court.
On the 4th day of September, 1828, Whitmel H. Boyd, Samuel B. Marshall and John 0. McLemore, entered into an agreement *127 under their hands and seals, by which Boyd leased to Marshall and McLemore, for a term of ten years, a lot of ground, in Nashville, with a front of 60 feet on Market and Water streets. As a consideration for the lease, Marshall and McLemore covenanted to pay Boyd and his heirs, the sum of one hundred and'fifty dollars per year, and also the further sum of five hundred dollars at the expiration of the lease. Boyd covenanted for himself and his heirs, to pay and satisfy Marshall and McLemore, their heirs and assigns, at the expiration of the lease, the full and fair cash valuation of such improvements as might be standing on the premises at the expiration of the lease, provided it did not exceed the sum of fifteen hundred dollars: this sum, whatever it might be,-he reserved to himself the right to pay in one, two and three years from the expiration of the lease, or to pay the same out of the rents of said improvements, if they would rent for an amount sufficient to pay it. Marshall and McLemore took possession of the premises under this lease, and made thereon improvements, which are still standing, and worth, as is averred by the complainants, more than fifteen hundred dollars. This lease by regular assignment became the property of James Bream & Co.' Some short time after the date of the lease Whitmel H. Boyd died, and in order to effect a division of his estate among his heirs,-a bill in chancery was filed, and the whole estate was sold under a decree of court. Under this proceeding James P. Hollman and wife became the legal owners of the reversion in fee to the premises leased; as has been stated: they sold and conveyed to Joseph W. Horton, and he to the defendants Dickinson & Shewsberry. At the expiration of the lease, the complainants insisted on the right to have satisfaction for the value of the improvements according to the contract of lease from the defendants, as assignees of the reversion, or to be permitted to take the same out of the rents and profits, both which was refused by the defendants. An action of ejectment was brought by the defendants to gain possession of the premises, and this bill is filed,by the complainants to enjoin the action, until these defendants will either pay the value of the improvements, or permit them to be received put of the rents and profits, and for general relief.
The right of the complainants to relief in this case, depends upon two legal propositions.
1st. Is the covenant of W. H. Boyd for himself and heirs, to pay for the improvements which the lessees, Marshall and McLemore, *128 might leave standing on the premises, such a covenant as runs with the land, and will under the provisions of the statute of 32d, Henry 8th, ch. 34, charge the defendants as assignees of the reversion: whether a particular express covenant sufficiently touches and concerns the thing demised, as to be capable of running with the land, is not unfrequently a question of difficulty, but such as we do not feel it to be in the case now under consideration. There is no covenant on the part of the lessees to improve; they may do so, or not, at their option. The covenant is on the part of the lessor to pay for improvements if they should be made and left standing at the expiration of the lease. A covenant to run with the land must touch and concern it, and it is difficult to conceive how a covenant to pay a pecuniary consideration for a house, if the tenant shall think proper to erect it, can be said to touch and concern the estate. But, even supposing that the tenants in this case had covenanted to make improvements, we are of opinion it would have been a covenant, not running with the land and not binding upon the assignee of the assignor of the reversion. We consider this veryjpoint as settled directly and conclusively by Spencer's case, 5th Coke’s Rep. 16. That case was this: Spencer and wife brought an action of covenant against Clark, assignee of J., assignee of S., and the case was this: Spencer and wife by deed indented, demised a house on certain land to S. for a term of 21 years, by which indenture S. covenanted for himself, his executors and administrators, that he, his executors, administrators or assigns, would build a brick wall upon a part of the land demised; S. assigned to J. and J. to the defendant, and for not making the brick wall, the plaintiffs brought t&e action of covenant against the defendant as as-signee. The first point adjudged is, when “the covenant extends to a thing in esse, parcel of the demise, the thing to be done by force of the covenant is quodam modo annexed and appurtenant to the thing demised, and shall go with the land, and shall bind the as-signee, although he be not bound by express words; but when the covenant extends to a thing which is not in being at the time of the demise it cannot be appurtenant or annexed to the thing which hath no being; as if the lessee covenants to repair the houses demised to him during the term, that is parcel of the contract, and extends to the support of the thing demised, and therefore, is quo-dam modo annexed and appurtenant to the houses, and shall bind the assignee, although he be not expressly bound by the covenant;” but *129 in the case at bar, the covenants concern a thing which was not in esse at the time of the demise made, but to be newly built thereafter, and therefore shall bind the covenantor, his executors and administrators, and not the assignee, for the law will not annex the covenant to a thing which hath no being.
The 2d point resolved in this case is, if the lessee had covenanted for himself and his assigns, that they would make a new wall upon some part of the thing demised, that for as much as it is tobe done upon the land demised, that it should bind the assignee; for although the covenant doth extend to a thing to be newly made, yet it is to be made upon the thing demised, and the assignee is to take the benefit of it, and therefore shall bind the assignee by .^express words.
The 1st point in this case determines, that a covenant to build a new wall upon the demised premises does not run with the land. And the 2d, that the assignee is not responsible in the covenant, unless he be bound in it by express words. There can be no difference in the legal construction of a contract to erect a wall, and one to build a house, and, therefore, if McLemore and Marshall had covenanted to build upon the leased premises, it would have been a personal covenant obligatory upon those expressly bound by it, and not running with the land, of course lit will not be supposed that the want of a covenant on the part of the tenants to improve, places the complainant in a better situation than if it had been made. There can be no pretence then- for saying that the covenant of Whitmel H. Boyd to pay for improvements left upon the premises at the expiraiion of the lease run with the estate, and charges the assignee of the reversion. A partial attempt has been made to sustain the complainants right to relief upon this point, upon the construction of statute of 32d, Henry 8th, ch- 34, which it is said expressly gives this action. That statute was passed to alter the common law principle, that covenants run with the land, but not with the reversion, and to give an action in such a case, both for and against the assignee of the reversion, and although as is observed in the commentary upon Spencer’s case,, in 3 Law Library, the words of this act are very -general, and taken literally would comprehend every covenant .expressed in the lease; yet, Lord Coke, in the conclusion of Spencer’s case, says, it was resolved to extend to covenants which touch or concern the thing demised and not to collateral covenants!- The same construction *130 is given to the statute by Lord Kenyon in delivering the opinion of the court in the case of Webb vs. Russell, 3 Term Rep. 393: it cannot then be extended further, and does not cover the complainant’s case.
2d. Does the reservation of the power by Whitmel H. Boyd the lessor, “to pay the value of improvements in one, two and three years, or at his election, to pay the same out of the rents of said improvements, if they would rent for an amount sufficient to pay it,” create an equitable charge upon the estate so as to warrant the complainants in seeking satisfaction for their demand out of it ? We think not. There are no words by which the charge is expressly created, nothing in the nature and circumstances of the contract, for which it can be implied. No security from Boyd was either asked or desired: the lessees were satisfied of his personal responsibility, and willing to rest upon it. The right to pay out of the rents, Boyd reserved for his own benefit, in case he should find it more convenient than to pay it himself. There is nothing from which it can be said, that if he chose to pay by the rent, the lessees were to continue in possession; he might immediately upon the expiration of the lease, have rented to other tenants, and appropriated the proceeds to the discharge of the complainants’ demand, and that without asking their consent. But as it is said, that he has reserved the power to pay personally, or out of the rents, and no election having been made as to the mode, the complainants have a right to keep possession of the premises and pay themselves. When it is determined that the assignees of the reversion, take the estate discharged from any liability upon» the covenant, it necessarily follows, that they are entitled to the possession immediately upon the expiration of the lease, and of consequence to the rents and profits. When the reversion was assigned, the lessor of the complainant and those representing him, lost the power of electing to pay out of the rents, for their interest in the estate was gone, and they were necessarily left personally liable for the demand, and might have been sued upon the covenant to pay in one, two and three years.
We are, then, of opinion, that in no point of view, in which this case can be looked at, are the complainants entitled to any relief against these defendants. We, therefore, reverse the decree of the chancellor, and dismiss the bill.